```
                                                          FILED
                                                     U.S. DISTRICT COURT
                                                   EASTERN DISTRICT ARKANSAS
```

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

OCT 2 0 2021

TAMMY H. DOWNS, CLERK
By:_____
                    DEP CLERK

**MICHAEL HAMES, JR., MICHAEL E.
HAMES and JAMES KENLEY,
Each Individually and on Behalf
of All Others Similarly Situated**

PLAINTIFFS

This case assigned to District Judge **Baker**
and to Magistrate Judge **Harris**

vs.                                 No. 3:21-cv-__218__- KGB

**STETSON COURIER, INC.,                                        DEFENDANTS
and JOHN STETSON**

## ORIGINAL COMPLAINT—COLLECTIVE ACTION

COME NOW Plaintiffs Michael Hames Jr., Michael E. Hames and James Kenley (collectively "Plaintiffs"), each individually and on behalf of all others similarly situated, by and through their attorneys Colby Qualls and Josh Sanford of Sanford Law Firm, PLLC, and for their Original Complaint—Collective Action ("Complaint") against Defendants Stetson Courier, Inc., and John Stetson ("Defendants"), they do hereby state and allege as follows:

### I.   PRELIMINARY STATEMENTS

1.   This is an action brought by Plaintiffs, each individually and on behalf of all others similarly situated, against Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), and the Arkansas Minimum Wage Act, ARK. CODE ANN. § 11-4-201, *et seq.* (the "AMWA").

2.   Plaintiffs, each individually and on behalf of all others similarly situated, seek a declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including a reasonable attorney's fee, as a result of Defendants' policy

and practice of failing to pay Plaintiffs and other similarly situated individuals proper minimum wage and overtime compensation under the FLSA and AMWA within the applicable statutory limitations period.

3. Upon information and belief, within the three years prior to the filing of the Complaint, Defendants have willfully and intentionally committed violations of the FLSA and the AMWA as described, *infra*.

4. This case is related to *Holmes, et al. v. Stetson Courier, Inc. et al.*, E.D. Ark. Case No. 4:20-cv-191-DPM (hereinafter "the *Holmes* case"), a pending case with similar claims under the FLSA and AMWA. Plaintiffs in this case fell outside the deadline to add new parties to the *Holmes* case.

## II.   JURISDICTION AND VENUE

4. The United States District Court for the Eastern District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

5. Plaintiffs' claims under the AMWA form part of the same case or controversy and arise out of the same facts as his FLSA claims.

6. This Court has supplemental jurisdiction over Plaintiffs' AMWA claims pursuant to 28 U.S.C. § 1367(a).

7. Defendants conduct business within the State of Arkansas.

8. Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Arkansas has personal jurisdiction over Defendants, and Defendants therefore "reside" in Arkansas.

9. A substantial part of the events or omissions giving rise to the claims alleged herein occurred in the Northern Division of the Eastern District of Arkansas. Specifically, Plaintiff Michael James, Jr., was employed within the Northern Division. Therefore, the acts alleged in this Complaint had their principal effect within the Eastern District, and venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### III.   THE PARTIES

10. Plaintiffs repeat and reallege all the preceding paragraphs of this Complaint as if fully incorporated in this section.

11. Plaintiff Michael Hames, Jr. ("Hames Jr."), is an individual and resident of Craighead County.

12. Plaintiff Michael E. Hames ("Michael") is an individual and resident of Craighead County.

13. Plaintiff James Kenley ("Kenley") is an individual and resident of Pulaski County.

14. Separate Defendant Stetson Courier, Inc. ("Stetson Courier"), is a for-profit corporation registered in Florida.

15. Stetson Courier's registered agent for service is John Stetson at 595 Bay Isles Road, Suite 210, Longboat, Florida 34228-3135.

16. Separate Defendant John Stetson ("John") is an individual and resident of Florida.

17. During each of the three years preceding the filing of this Original Complaint, Defendants continuously employed at least four employees.

18. Defendants were at all times relevant hereto Plaintiffs' employer and are and have been engaged in interstate commerce as that term is defined under the FLSA.

## IV. FACTUAL ALLEGATIONS

19. Plaintiffs repeat and reallege all previous paragraphs of this Complaint as though fully incorporated in this section.

20. John is a principal, director, officer, and/or owner of Stetson Courier.

21. John took an active role in operating Stetson Courier and in the management thereof.

22. John, in his role as an operating employer of Stetson Courier, had the power to hire and fire Plaintiffs, often supervised Plaintiffs' work and determined their work schedule, and made decisions regarding Plaintiffs' pay, or lack thereof.

23. John, at relevant times, exercised supervisory authority over Plaintiffs in relation to their work schedule, pay policy and the day-to-day job duties that Plaintiffs' jobs entailed

24. During the relevant time, Defendants had at least two employees who engaged in interstate commerce or in the production of goods for interstate commerce, or who handled, sold, or otherwise worked on goods or materials that had been moved in or produced for interstate commerce, such as vehicles and fuel.

25. Defendants' annual gross volume of sales made or business done was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Original Complaint.

26. Hames Jr. is currently employed by Defendant as a Medical Courier Driver and has been since September of 2019.

27. Michael was employed by Defendant as a Medical Courier Driver from January of 2021 to September of 2021.

28. Kenley is currently employed by Defendant as a Medical Courier Driver and has been since October of 2019.

29. At all times material hereto, Plaintiffs were entitled to the rights, protections, and benefits provided under the FLSA and AMWA.

30. Plaintiffs' primary duty was delivering pharmaceuticals.

31. Defendants also employed other Medical Courier Drivers during the time period relevant to this lawsuit.

32. Plaintiffs and other Medical Courier Drivers participate in interstate commerce as part of their jobs by delivering pharmaceuticals that have been produced and purchased out-of-state.

33. Each week, Plaintiffs and other Medical Courier Drivers were assigned routes to drive to pick up and deliver pharmaceuticals from Defendants' clients' business locations.

34. Plaintiffs and other Medical Courier Drivers were classified as independent contractors and were paid for each route they drove for Defendants.

35. Plaintiffs and other Medical Courier Drivers were paid a piece rate for each route driven; they were not paid by the hour and they were not paid a salary.

36. For example, Hames Jr. was paid between $32.00 and $177.00 per route, depending on the route driven.

37. Plaintiffs were not paid a weekly minimum guaranty pursuant to 29 C.F.R. § 541.604(b).

38. When making deliveries that took longer than 20 minutes, Plaintiffs and other Medical Courier Drivers were previously paid an additional rate of $0.20 per minute spent waiting for trucks to be loaded; however, Defendants stopped paying this additional $0.20 per minute around August of 2021.

39. Since around August of 2021, Defendants paid Plaintiffs and other Medical Courier Drivers the same rate per delivery regardless of the time spent on a delivery.

40. Plaintiffs regularly worked more than forty hours in a week.

41. Upon information and belief, other Medical Courier Drivers had similar schedules to Plaintiffs and also regularly or occasionally worked more than forty hours in a week.

42. Plaintiffs and other Medical Courier Drivers were required to drive their own vehicles to deliver pharmaceuticals.

43. Plaintiffs often drove over 1,000 miles per week.

44. Upon information and belief, other Medical Courier Drivers drove a similar number of miles per week to Plaintiffs.

45. Defendants did not reimburse Plaintiffs and other Medical Courier Drivers for gas, mileage, and automobile expenses.

46. According to the Internal Revenue Service, the standard mileage rate for the use of a car during 2019 was 58 cents per mile, during 2020 was 57.5 cents per mile, and during 2021 is 56 cents per mile.

47. Because Plaintiffs and other Medical Courier Drivers were under-reimbursed for mileage, they consistently "kicked back" the cost of mileage to Defendants, causing additional minimum wage and overtime violations. *See* C.F.R. § 531.35.

48.  Defendants expected Plaintiffs and other Medical Courier Drivers to follow Defendants' policies regarding their employment.

49.  Plaintiffs and other Medical Courier Drivers did not manage Defendants' enterprise or a customarily recognized subdivision of the enterprise.

50.  Plaintiffs and other Medical Courier Drivers did not exercise discretion and independent judgment with respect to any matters of significance.

51.  Plaintiffs' and other Medical Courier Drivers' duties were rote and routine, and they sought input from supervisors when their duties were not rote and routine.

52.  Plaintiffs and other Medical Courier Drivers were hired to work for Defendants for a continuous and ongoing period of time.

53.  Plaintiffs and other Medical Courier Drivers did not direct the work of any other employee.

54.  Plaintiffs and other Medical Courier Drivers did not select any employees for hire, nor did Plaintiffs and other Medical Courier Drivers have the ability to fire employees.

55.  Plaintiffs and other Medical Courier Drivers did not have any control of or authority over any employee's rate of pay or working hours.

56.  Plaintiffs and other Medical Courier Drivers were required to purchase and wear Defendants' company uniforms.

57.  Plaintiffs and other Medical Courier Drivers were required to pass drug tests and background checks, which they were required to pay for themselves.

58. Plaintiffs and other Medical Courier Drivers were required to get Health Insurance Portability and Accountability Act ("HIPPA") certifications, which they were required to pay for themselves.

59. Defendants determined Plaintiffs' and other Medical Courier Drivers' pay scale for services without input from or negotiation with Plaintiffs or other Medical Courier Drivers.

60. Defendants set prices for services without input from or negotiation with Plaintiffs or other Medical Courier Drivers.

61. Defendants made decisions on advertising Defendants' business without Plaintiffs' or other Medical Courier Drivers' input.

62. Defendants made decisions on what new business to pursue or take without Plaintiffs' or other Medical Courier Drivers' input.

63. Plaintiffs and other Medical Courier Drivers did not negotiate contracts or prices with Defendants' customers.

64. Defendants directed Plaintiffs and other Medical Courier Drivers in their work.

65. Plaintiffs and other Medical Courier Drivers were assigned regular routes, and they were not allowed to refuse that route or request a different route.

66. When Medical Courier Drivers were "on call," they were in theory allowed to refuse to drive a route, but Defendants indicated to Medical Courier Drivers that continual refusals would result in fewer routes being assigned to them overall.

67. Defendants required Plaintiffs' and other Medical Courier Drivers to follow the directions of Defendants with respect to delivery of pharmaceuticals.

68. Plaintiffs and other Medical Courier Drivers had no opportunity to share in Defendants' profits.

69. Plaintiffs and other Medical Courier Drivers did not share in Defendants' losses.

70. Because of the number of hours worked and the mileage kickback, Plaintiffs' and other Medical Courier Drivers' pay frequently fell below the minimum wages required by the FLSA and the AMWA.

71. Defendants failed to pay Plaintiffs and other Medical Courier Drivers 1.5x their regular rate of pay for all hours worked over 40 each week.

72. Plaintiffs and other Medical Courier Drivers were and are entitled to lawful minimum wages for all hours worked and overtime wages for all hours worked over forty per week.

73. It was Defendants' commonly applied practice not to pay Plaintiffs and other Medical Courier Drivers a lawful minimum wage for all hours worked up to forty hours each week, nor lawful overtime wages for all hours worked in excess of forty per week.

74. Defendants knew or showed reckless disregard for whether the way they paid Plaintiffs and other Medical Courier Drivers violated the FLSA and the AMWA.

## V. REPRESENTATIVE ACTION ALLEGATIONS

75. Plaintiffs repeat and reallege all previous paragraphs of this Complaint as though fully incorporated in this section.

76. Plaintiffs bring their claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

77. Plaintiffs bring their FLSA claims on behalf of all Medical Courier Drivers

employed by Defendant at any time within the applicable statute of limitations period who are entitled to payment of the following types of damages:

A. Payment for all hours worked, including payment of a lawful minimum wage for all hours worked for Defendants up to forty hours in a workweek and payment of lawful overtime wages for all hours worked for Defendants over forty hours in a workweek;

B. Liquidated damages; and

C. Attorneys' fees and costs.

78. Plaintiffs propose the following collective under the FLSA:

**All Medical Courier Drivers within the past three years who have not joined the *Holmes* case (Case No. 4:20-cv-191-DPM).**

79. In conformity with the requirements of FLSA Section 16(b), each Plaintiff has filed or will soon file his or her written Consent to Join this lawsuit.

80. The relevant time period dates back three years from the filing of this Original Complaint and continues forward through the date of judgment, pursuant to 29 U.S.C. § 255(a).

81. The members of the proposed FLSA Collective are similarly situated in that they share these traits:

A. They were classified by Defendants as independent contractors;

B. They were subject to Defendants' common pay policy and practice of paying per route rather than hourly;

C. They were subject to Defendants' common policy and practice of failing to properly reimburse them for all miles driven;

D. They were subject to Defendants' common policy of denying lawful pay for all hours worked; and

E.   They were subject to the numerous other policies and practices as described above.

82.   Plaintiffs are unable to state the exact number of the potential members of the FLSA Collective but believe that the group exceeds thirty (30) persons.

83.   Defendants can readily identify the members of the Section 16(b) collective. The names and physical and mailing addresses of the FLSA collective action plaintiffs are available from Defendants, and a Court-approved Notice should be provided to the FLSA collective action plaintiffs via first class mail, email, and text message to their last known physical and electronic mailing addresses and cell phone numbers as soon as possible, together with other documents and information descriptive of Plaintiff's FLSA claim.

## VI.   FIRST CAUSE OF ACTION
### (Individual Claims for Violation of the FLSA)

84.   Plaintiffs repeat and reallege all previous paragraphs of this Complaint as though fully incorporated in this section.

85.   Plaintiffs assert this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq*.

86.   At all relevant times, Defendants were Plaintiffs' "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

87.   At all relevant times, Defendants have been, and continue to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

88.   29 U.S.C. §§ 206 and 207 require employers to pay employees a minimum wage for all hours worked up to 40 each week and overtime wages of 1.5x the regular

rate of pay for all hours worked over 40 each week unless the employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying DOL regulations.

89. During the period relevant to this lawsuit, Defendants misclassified Plaintiffs as independent contractors.

90. Despite the entitlement of Plaintiffs to lawful minimum and overtime wages under the FLSA, Defendants failed to pay Plaintiffs lawful minimum wages for all hours worked up to forty in each week and overtime wages for all hours worked over forty each week.

91. Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

92. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of the Original Complaint.

## VII. SECOND CAUSE OF ACTION
### (Individual Claims for Violation of the AMWA)

93. Plaintiffs repeat and reallege all previous paragraphs of this Complaint as though fully incorporated in this section.

94. Plaintiffs assert this claim for damages and declaratory relief pursuant to the AMWA, ARK. CODE ANN. § 11-4-201, *et seq.*

95. At all relevant times, Defendants were Plaintiffs' "employer" within the meaning of the AMWA, ARK. CODE ANN. § 11-4-203(4).

96. Arkansas Code Annotated §§ 11-4-210 and 211 require employers to pay all employees a minimum wage for all hours worked up to 40 each week and to pay 1.5x

regular wages for all hours worked over 40 each week unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and accompanying DOL regulations.

97. Despite the entitlement of Plaintiffs to lawful minimum and overtime wages under the AMWA, Defendants failed to pay Plaintiffs lawful minimum wages for all hours worked up to forty in each week and overtime wages for all hours worked over forty each week.

98. Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary and in bad faith.

99. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of this Complaint, pursuant to Arkansas Code Annotated § 11-4-218.

## VIII.   THIRD CAUSE OF ACTION
### (Collective Action Claim for Violation of the FLSA)

100. Plaintiffs repeat and reallege all previous paragraphs of this Complaint as though fully incorporated in this section.

101. Plaintiffs, each individually and on behalf of all others similarly situated, assert this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

102. At all relevant times, Defendants have been, and continue to be, an "employer" of Plaintiffs and all those similarly situated within the meaning of the FLSA, 29 U.S.C. § 203.

103. During the period relevant to this lawsuit, Defendants misclassified Plaintiffs and all similarly situated members of the FLSA collective as independent contractors.

104. Despite the entitlement of Plaintiffs and those similarly situated to minimum wage and overtime payments under the FLSA, Defendants failed to pay Plaintiffs and all those similarly situated minimum wage for all hours worked up to 40 per week and an overtime rate of 1.5x their regular rates of pay for all hours worked over 40 each week, and instead deliberately chose to only pay them for each route they drove.

105. Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary and in bad faith.

106. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs and all those similarly situated for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of the Original Complaint.

86. Alternatively, should the Court find that Defendants acted in good faith in failing to pay Plaintiffs and all those similarly situated as provided by the FLSA, Plaintiffs and all those similarly situated are entitled to an award of prejudgment interest at the applicable legal rate.

### IX.   PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs Michael Hames, Jr., Michael E. Hames and James Kenley, each individually and on behalf of all others similarly situated, respectfully pray that Defendants be summoned to appear and to answer herein and for declaratory relief and damages as follows:

A. Certification of a collective action pursuant to the FLSA, with all attendant notices to collective members, and proper procedures, all as set forth above and as to be explained more fully by motion practice;

B.   A declaratory judgment that Defendants' practices alleged herein violated the FLSA, the AMWA and their relating regulations;

C.   Judgment for damages for all unpaid minimum and overtime wages pursuant to the FLSA, the AMWA and their relating regulations;

D.   Judgment for liquidated damages pursuant to the FLSA, the AMWA and their relating regulations;

E.   An order directing Defendants to pay Plaintiffs and other similarly situated employees prejudgment interest, a reasonable attorneys' fee, and all costs connected with this action; and

G.   Such other and further relief as this Court may deem just and proper.

                   Respectfully submitted,

                   **MICHAEL HAMES, JR., MICHAEL E. HAMES and JAMES KENLEY, Each Individually and on Behalf of All Others Similarly Situated, PLAINTIFFS**

                   SANFORD LAW FIRM, PLLC
                   Kirkpatrick Plaza
                   10800 Financial Centre Pkwy, Suite 510
                   Little Rock, Arkansas 72211
                   Telephone: (501) 221-0088
                   Facsimile: (888) 787-2040

                   /s/ Colby Qualls
                   Colby Qualls
                   Ark. Bar No. 2019246
                   colby@sanfordlawfirm.com

                   /s/ Josh Sanford
                   Josh Sanford
                   Ark. Bar No. 2001037
                   josh@sanfordlawfirm.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**MICHAEL HAMES, JR., MICHAEL E. HAMES and JAMES KENLEY, Each Individually and on Behalf of All Others Similarly Situated**                         **PLAINTIFFS**

vs.                                            No. 3:21-cv-___

**STETSON COURIER, INC., and JOHN STETSON**                         **DEFENDANTS**

## CONSENT TO JOIN COLLECTIVE ACTION

I was employed as a medical courier driver for Stetson Courier, Inc. and John Stetson within the past three years. I understand this lawsuit is being brought under the Fair Labor Standards Act for <u>unpaid wages</u>. I consent to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action or adjudication by the Court.

*James Kenley*
**JAMES KENLEY**
October 20, 2021

**Josh Sanford, Esq.**
**SANFORD LAW FIRM, PLLC**
**Kirkpatrick Plaza**
**10800 Financial Centre Pkwy, Suite 510**
**Little Rock, Arkansas 72211**
**Telephone: (501) 221-0088**
**Facsimile: (888) 787-2040**
**josh@sanfordlawfirm.com**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MICHAEL HAMES, JR., MICHAEL E.                     PLAINTIFFS
HAMES and JAMES KENLEY,
Each Individually and on Behalf
of All Others Similarly Situated

vs.                          No. 3:21-cv-___

STETSON COURIER, INC.,                                   DEFENDANTS
and JOHN STETSON

## CONSENT TO JOIN COLLECTIVE ACTION

I was employed as a medical courier driver for Stetson Courier, Inc. and John Stetson within the past three years. I understand this lawsuit is being brought under the Fair Labor Standards Act for unpaid wages. I consent to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action or adjudication by the Court.

_____
**MICHAEL E. HAMES**
October 20, 2021


**Josh Sanford, Esq.**
**SANFORD LAW FIRM, PLLC**
**Kirkpatrick Plaza**
**10800 Financial Centre Pkwy, Suite 510**
**Little Rock, Arkansas 72211**
**Telephone: (501) 221-0088**
**Facsimile: (888) 787-2040**
**josh@sanfordlawfirm.com**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**MICHAEL HAMES, JR., MICHAEL E.**                                      **PLAINTIFFS**
**HAMES and JAMES KENLEY,**
**Each Individually and on Behalf**
**of All Others Similarly Situated**

vs.                                    No. 3:21-cv-____

**STETSON COURIER, INC.,**                                              **DEFENDANTS**
**and JOHN STETSON**

## CONSENT TO JOIN COLLECTIVE ACTION

I was employed as a medical courier driver for Stetson Courier, Inc. and John Stetson within the past three years. I understand this lawsuit is being brought under the Fair Labor Standards Act for <u>unpaid wages</u>. I consent to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action or adjudication by the Court.

_____
**MICHAEL HAMES, JR.**
October 20, 2021

**Josh Sanford, Esq.**
**SANFORD LAW FIRM, PLLC**
**Kirkpatrick Plaza**
**10800 Financial Centre Pkwy, Suite 510**
**Little Rock, Arkansas 72211**
**Telephone: (501) 221-0088**
**Facsimile: (888) 787-2040**
**josh@sanfordlawfirm.com**