IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| ROY HOLMES; TINA ALEXANDER; PATRICK NORRIS; and MELISSA GARNER, Each Individually and on Behalf of All Others Similarly Situated | | PLAINTIFFS |
| v. | No. 4:20-cv-191-DPM | |
| STETSON COURIER, INC., and JOHN STETSON | | DEFENDANTS |
| MICHAEL HAMES, JR.; MICHAEL E. HAMES; and JAMES KENLEY, Each Individually and on Behalf of All Others Similarly Situated | | PLAINTIFFS |
| v. | No. 3:21-cv-218-DPM | |
| STETSON COURIER, INC., and JOHN STETSON | | DEFENDANTS |

ORDER

In these wage cases, the couriers argue they were misclassified as independent contractors and seek unpaid overtime. The *Holmes* case is well-developed: Stetson seeks summary judgment and decertification of the conditionally certified group, while the couriers seek a trial. Thirty-seven individuals have joined this collective. The *Hames* case is a tag-along: three additional couriers press identical claims against Stetson and request conditional certification of a second collective.

Stetson opposes that step, arguing that no good reason exists for a second group. Whether John Stetson should remain in the case, as the alleged joint employer of the workers connected to his corporation, is another common issue. He seeks summary judgment, too. Some *Holmes* group members also assert retaliation in Stetson's post-lawsuit actions. The motions have been ripe for some months and the Court regrets its delay in ruling on them.

Genuine disputes of material fact exist about the economic reality of the relationship between Stetson and the couriers. *Walsh v. Alpha & Omega USA, Inc.*, 39 F.4th 1078, 1082 (8th Cir. 2022). It's agreed that Stetson had one Arkansas customer, All Care Pharmacy, and the couriers made deliveries of various kinds for several All Care locations. Stetson and the couriers operated under an "Independent Contractor and Work for Hire Agreement." How things actually worked, though, is disputed. There is proof going both ways, for example, on whether the couriers could accept or refuse deliveries at their discretion, and without repercussion. *Compare Doc. 59 at 4-5 with Doc. 67 at 14-18*. The same is true for control issues in general. *Doc. 58 at 21-22; Doc. 66 at 14-19*. A trial is the best way to sort these and other disputed material facts as the Court evaluates the totality of the circumstances. *Walsh*, 39 F.4th at 1082-83.

Whether John Stetson is an employer for Fair Labor Standards Act and Arkansas Minimum Wage Act purposes is the next question. The

federal statute sweeps broadly, making anyone who acts "directly or indirectly" in an employer's interest an employer, too. 29 U.S.C. § 203(d). The record is clear that he has no direct involvement in Stetson's day to day operations with All Care Pharmacy in Arkansas. An operations manager handled all that. *Doc. 57-2*. But, Stetson controls Stetson Couriers, Inc., and he personally oversaw creation of the parties' animating agreement, which was intended to create an independent contractor relationship. Disputed issues of material fact therefore also exist on the joint employer point: Taking the record where disputed in the light most favorable to the couriers, it could reasonably be concluded that John Stetson acted (and acts) indirectly in the corporation's interest in relation to the couriers. *Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262-63 (8th Cir. 1963); *see also Donovan v. Agnew*, 712 F.2d 1509, 1511-12 (1st Cir. 1983).

The dispute about the economic reality of the relationship between the company and the couriers precludes summary judgment on the retaliation claim, too. The anti-retaliation provision of the FLSA only applies to employees. 29 U.S.C. § 215(a)(3). The trial will resolve that threshold issue. Plus, the parties have not made detailed arguments about the elements of this claim and the record. This can be done at the trial.

What should be done about the *Hames* matter? The couriers are correct that serial collectives involving one employer are not *per se*

wrong.  Stetson is also correct, though, that an insufficient justification is presented here.  The Court authorized ample notice about the *Holmes* group.  The couriers' lawyers implemented that plan diligently.  The record gives no indication that the mails and emails failed to reach current and former couriers covered by the original collective.  Michael Hames, Jr., Michael E. Hames, and James Kenley are similarly situated to those in the *Holmes* group.  The reasonable inference is that, for some reason, they missed the deadline for joining the first group.  (The Court provided ninety days to opt in, as requested by the couriers, rather than the sixty days suggested by Stetson.)  A motion to allow belated opt-ins, rather than a second case, would have been the better route for addressing this circumstance.  FED. R. CIV. P. 1 and Advisory Committee Notes, 2015 Amendment.  While the *Hames* plaintiffs say others would be interested in joining the second group, they provide no particulars.  The overlap problems are obvious.  The proposed definition seeks to cure those problems, but confusion, difficulty, and delay are the most likely results in the circumstances presented.  This is not a merits matter;  it is a recognition of the practical considerations presented and whether a second group is the best way to fairly and efficiently address the disputes between Stetson and its couriers.  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

\* \* \*

The *Holmes* motion for summary judgment, Doc. 57, is denied. The *Holmes* motion for decertification,* Doc. 60, is denied. The *Hames* motion to conditionally certify, Doc. 14, is denied.

Because of the overlap, and to achieve efficiencies for the parties and the Court, *Hames*, Case No. 3:21-cv-218-DPM, is consolidated for trial with *Holmes*, Case No. 4:20-cv-191-DPM. FED. R. CIV. P. 42(a). All future filings should be made in Case No. 4:20-cv-191-DPM, the lead case, with the joint style used in this Order. The Court requests the parties to sprint during the next month on any clean-up discovery needed. The issues of law have already been well-ventilated, so there's no good reason for another round of pre-trial motions.

This matter is first out on the Court's civil docket for trial on 12 December 2022. Some criminal cases, which must take first priority, are also set for trial then, but current indications are that none will need a trial on that date. The Court will know for sure about the criminal cases by Thanksgiving, and will advise the parties promptly.

---

*The Court directs the Clerk to correct the docket. Doc. 60 is a motion to decertify the collective action.

-6-

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

24 October 2022