IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**MICHAEL E. HAMES and JAMES KENLEY,**  **PLAINTIFFS**
Each individually and on Behalf of All
Others Similarly Situated

vs.                                         Case No. 3:21-cv-218-DPM

**STETSON COURIER, INC.**                          **DEFENDANTS**
**and JOHN STETSON**

### RESPONSE IN PARTIAL OPPOSITION TO MOTION FOR COSTS AND ATTORNEYS' FEES AND BRIEF IN SUPPORT

Defendants Stetson Courier, Inc. and John Stetson, (collectively, Defendants), by and through their attorneys, Rose Law Firm, P.A., and for their Response in Partial Opposition to Plaintiffs' Motion for Costs and Attorneys' Fees, state:

### I.   INTRODUCTION

On October 27, 2023, Plaintiffs filed their Motion for Costs and Attorneys' Fees and Brief in Support (Plaintiffs' Motion), requesting the Court award Plaintiffs fees and costs in the amount of $5,294.00. ECF Nos. 35–36. In addition to the arguments presented in Plaintiffs' Motion, Plaintiffs rely on Sanford Law Firm, PLLC's (SLF) billing spreadsheet, the declaration of Attorney Josh Sanford, and SLF's costs invoice, to support their costs and fees request. *See* ECF No. 141–1, 141–2, 141–3. For the reasons explained in this Response, Defendants respectfully request that the Court grant in part and deny in part Plaintiffs' Motion.

### II.   BACKGROUND

This companion case to *Holmes v. Stetson Courier and John Stetson*, 4:20-cv-191-DPM, was initiated by Plaintiffs Michael Hames, Jr., Michael E. Hames, and James Kenley against Defendants on October 20, 2021, alleging violations of the Fair Labor Standards Act (FLSA), 29

U.S.C. § 201 *et seq.*, and the Arkansas Minimum Wage Act (AMWA), Ark. Code Ann. § 11–4–201 *et seq.* Plaintiffs, each individually and on behalf of all other similarly situated, sought damages, including back wages and other damages available under the FLSA and AMWA, on the basis that they were employees misclassified as independent contractors allegedly resulting in unpaid minimum wages and overtime. *See* ECF No. 1, ¶¶ 1–2.

On June 27, 2022, Plaintiff sought conditional certification of the collective action class. *See* ECF No. 14. On October 24, 2022, the Court denied Plaintiffs' request for conditional certification and consolidated this matter with the *Holmes* matter for trial. *See* ECF No. 21. From this point forward, the procedural background of this case is identical to the *Holmes* case. As such, Defendants incorporate its Response in Partial Opposition to Motion for Costs and Attorneys' Fees and Brief in Support filed in the *Holmes* case.

### III.   LEGAL STANDARDS

Under the FLSA, district courts "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021) (quoting 29 U.S.C. § 216(b)). Likewise, the AMWA provides that an employer shall be liable for "[c]osts and such reasonable attorney's fees as may be allowed by the court." Ark. Code Ann. § 11-4-218. To calculate reasonable attorneys' fees, federal courts begin by employing the lodestar method, which multiplies the number of hours worked by the prevailing hourly rate. *Id.* (quoting *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)). "The court 'may rely on reconstructed time entries to calculate the hours worked if those entries satisfactorily document the time,' but it 'should exclude hours that were not reasonably expended from its calculations.'" *Id.* (quoting *Childress*, 932 F.3 at 1172) (cleaned up in *Vines*). "Then, it 'may reduce [the lodestar] if a plaintiff does not obtain all the relief . . . sought.'" *Id.* (quoting

*Childress*, 932 F.3d at 1172). "When reducing the lodestar, '[t]he district court also may consider other factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 [5th Cir. 1974)],'" *id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)) (alterations in original), which include: (1) the time and labored required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the resulted obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases, *see Ga. Hwy. Express, Inc.*, 488 F.3d at 717–18.

## IV.   ARGUMENT

In support of their Motion, Plaintiffs have submitted counsel's full billing history, affidavits, and conducted a self-audit to remove any hours that are excessive, redundant, or otherwise unnecessary. *See* ECF No. 36, p. 7. However, further reductions are necessary to avoid the payment of excessive hours billed at rates that are above the local market in accordance with the FLSA's statutory intent and the case law interpreting a "reasonable" fee for similar lawsuits.

**A.   CALCULATION OF THE LODESTAR REQUIRES REDUCTION OF THE FEES REQUESTED BY SLF.**

The first step for calculating a reasonable attorneys' fee is by employing the lodestar, which requires the Court to multiply the number of hours reasonably expended on the case by the prevailing hourly rate. *Vines* 9 F.4th at 855. For the reasons set forth below, both the number of hours expended and the hourly rate requested by SLF are inflated and require significant reductions.

1. **THE HOURS EXPENDED BY SLF ARE NOT REASONABLE AND SHOULD BE REDUCED.**

After a self-conducted "billing audit," SLF alleges that it worked 59.1 hours on this case yet only claims 38.1, resulting in alleged discount of $3,217.30. *See* ECF No. 36, p. 7–8; *see also* ECF No. 35–1. However, none of the "excluded" billing entries were provided.[1] Rather than give into the psychological urge to begin the analysis presupposing SLF has already excluded 21 hours legitimately worked in furtherance of litigation, evidence of which was not provided, Defendants contend that the proper starting point for consideration of SLF's fee request is for the 38.1 hours it *claimed*.[2] *See Smiley v. Little Rock Donuts, LLC*, 4:20-CV-00102-JM, 2021 WL 4302219, at *3 (E.D. Ark. Sept. 21, 2021) ("Although SLF attempted to self-audit there are still issues that the Court will address."); *Skender v. Eden Isle Corp.*, No. 4:20-cv-00054-BRW, 2021 WL 2964991, at *5 (E.D. Ark. July 14, 2021) ("After conducting a self-audit, SLF seeks reimbursement for 116.1 hours of work. Although SLF removed some of the unnecessary oversight-billing, there is still plenty being claimed.")

Of the 38.1 hours claimed by SLF, there are still significant "issues" that should be addressed. *See Smiley*, 2021 WL 4302219, at *3. There are **54** billing entries for "Client Communications," where the description is listed as: "PRIVILEGED INFORMATION." *See* ECF No. 35–1. As this Court has recognized in deducting billing entries with redacted narratives, "there is no way for the Court to determine whether the [redacted] communications advanced the

---

[1] Marking up a good or service and putting it on sale is a pricing strategy that misleadingly conveys to the consumer that s/he is receiving a discount. Neither Defendants nor the Court know the legitimacy of the "excluded" billing entries. Are those entries for the performance of work done in furtherance of the litigation or work that would have excluded anyway, such as administrative work, duplicative billing, or micromanaging?

[2] If SLF believed that the billing entries excluded for legitimate work done in furtherance of this litigation, it is unclear why those billing entries were not included.

4

litigation. Furthermore, the Court doubts that the entries reveal privileged information." *Smiley*, 2021 WL 4302219, at *3 (deducting $1,370 for "client communications" with no description). The 54 billing entries obscured by "PRIVILEGED INFORMATION" are insufficient to show that the time was spent in advancement of the litigation and must be deducted. *See id.*; *see also Skender*, 2021 WL 2964991, at *6 (". . . there are over sixty entries where the description of the work performed is entirely redacted. Typically it involves 'client communication.' However, I have no idea whether the communication was reasonable or necessary to advance the case. Since some were removed and others were not, I can only presume that some were unreasonable. Additionally, surely not every contact with the client involved a privileged communication."); ECF No, 35–1.

"Staff" work is covered by overhead and should not be shifted to Defendants. *See Smiley*, 2021 WL 4302219, at *3 (citing *Shrader v. OMC Aluminum Boat Gp., Inc.*, 128 F.3d 1218, 1222 (8th Cir. 1997) ("Secretarial services were excluded from the award as well.")). Similarly, courts have frequently admonished and deducted hours for excessive intrafirm communications. *See Skender*, 2021 WL 2964991, at *5 (collecting cases). The following entries are clearly "administrative" work that are clearly unnecessary intraoffice staff communications that dd not advance the litigation and, as such, should be deducted from Plaintiffs' fee request:

- Staff:
    1) 11/30/2021: "Preparation and drafting of Waiver of Service for Stetson Courier and John Stetson."
    2) 11/9/2022: "Work on Client's file: damages"
    3) 11/10/2022: "Work on Client's file: damages"
    4) 11/14/2022: "Work on Client's file: damages"

5

- Colby Qualls:

    1) 11/23/2021: "Conference with Staff via email re waivers of service"

    2) 1/3/2022: "Conference wit Staff via email re waiver of service"

    3) 11/9/2022: "Conference with Staff re damages calculations"

ECF No. 35–1, p. 1–3. Similarly, Mr. Qualls had communications or conferences with "Paralegals." To the extent *all* these entries of "conferences" with paralegals are not excluded completely as administrative work, they should be significantly reduced as excessive:[3]

- Colby Qualls:

    1)  4/20/2022: "Conference with Paralegal via email re 26(f) report"

    2)  6/13/2022: "Conference with Paralegal re drafting of declaration for MCA"

    3)  6/21/2022: "Conference with Paralegal via electronic communication re Plaintiff's initial disclosures"

    4)  11/3/2022: "Conference with Paralegal re scheduling depositions"

    5)  11/9/2022: "Conference with Paralegal via email re documents from Client"

    6)  11/10/2022: "Conference with Paralegal re document production"

    7)  11/10/2022: "Conference with Paralegal via email re document production"[4]

    8)  11/11/2022: "Conference with Paralegal re document production"

---

[3] *See Skender*, 2021 WL 2964991, at *5 (collecting cases).
[4] This entry is clearly duplicative of the prior entry.

  9)  11/11/2022: "Conference with Paralegal via electronic communication re document production from Client"

  10)  11/14/2022: "Conference with Paralegal via email re client documents"

  11)  11/15/2022: "Conference with Paralegal via email re document production"

  12)  11/15/2022: "Conference with Paralegal re document production"[5]

  13)  11/15/2022: "Conference with Paralegal via email re document production"[6]

*Id.* at p. 1–3. While Defendants appreciate SLF's willingness to use Paralegals to perform substantive legal work at a lower rate, any benefit is lost when an attorney (billing at attorney rates) has an unnecessary "conference" after every task performed by the Paralegal.

  Likewise, unnecessary and excessive oversight-billing should not be claimed. *See Skender*, 2021 WL 2964991, at *5. While SLF can engage in a "collaborative approach" involving constant oversight by a senior lawyer, it cannot expect (nor should it ask) Defendants to pay for the practice, since it adds unnecessary hours to the bill. *See id.* Therefore, the following entries should be deducted as unnecessary oversight for which no "fee-paying client would compensate SLF":

- Colby Qualls:

  1)  6/10/2022: "Conference with JS and SG via email re case strategy"

  2)  11/10/2022: "Conference with JS and VK via email re trial plan"

ECF No. 35–1, p. 1–2.

---

[5] This entry is clearly duplicative of the prior entry.

[6] This entry is duplicative of the previous two entries.

After excluding the billing entries that represent unreasonable time expended in this matter, as set forth above, Defendants calculate that $1,566 should be deducted from Plaintiffs' request for fees.

The extent of work claimed by SLF is replete with billing entries Courts have excluded. Yet, Plaintiffs' Motion, without any hesitancy, requests that the cost of this work be shifted to Defendants. While Defendants endeavored to perform line-by-line examination of the multitude of billing entries in the two-week response time, there are undoubtedly invalid entries that Defendants missed. *See Smith v. Om Purshantam, LLC*, No. 4:18-cv-00797-KGB, 2021 WL 1230468, at *4 (E.D. Ark. Mar. 31, 2021). Accordingly, Defendants contend that additional reductions are necessary for the extent of work to be "reasonable."

### 2. THE HOURLY RATE CLAIMED BY SLF IS NOT REASONABLE AND MUST BE REDUCED.

SLF requests various hourly rates in this case, ranging from $383 to $75:

- Rebecca Matlock: $250;
- Colby Qualls: $150;
- Paralegal: $100; and
- Law Clerk: $75.

*See* ECF No. 36, p. 12. According to SLF, the "hourly rates charged by SLF are reasonable and below the national average for complex litigation." *See id.* at 12–13. However, the Eighth Circuit has held that "[a] reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001); *see also Burton v. Nilkanth Pizza, Inc.*, 20 F.4th 428, 432 (8th Cir. 2021) ("The district court properly applied its familiarity with the local bar to calculate reasonable rates."); *Banks v. Slay*, 875 F.3d 876, 882–83 (8th Cir. 2017) (no abuse of discretion for reducing hourly rate based

8

on a market survey of hourly rate for lawyers in the greater St. Louis area). "FLSA litigation is not so nuanced that a national rate would be justified," *Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRWS, 2021 WL 11583464, at *5 (E.D. Ark. Sept. 8, 2021) (Slip Copy), and "[j]udges in the Eastern and Western Districts of Arkansas routinely reject as unreasonable hourly rates of $300+ for Mr. Sanford and $200+ for more junior attorneys," *Mitchell v. Brown's Moving & Storage, Inc.*, No. 4:19-CV-783-LPR, 2023 WL 2715027, at *3 (E.D. Ark. Mar. 29, 2023) (Slip Copy) (citing *Ewing v. Pizza Czar, Inc.*, No. 3:19-CV-00232-LPR, 2022 WL 614932, at *6 (E.D. Ark. Mar. 2, 2022) (lowing the rates for Mr. Sanford to $250; for Ms. Kinney and Mr. Rauls to $175; and for Mr. Brown to $125); *Bonds v. Langston*, No. 3:18-CV-00189, 2021 WL 4130508, at *3 n. 26 (E.D. Ark. Sept 9, 2021) (Slip Copy) (collecting cases)).

The billing spreadsheet indicates that Colby Qualls is the attorneys with the overwhelming majority of billing entries. In 2023, this Court rejected SLF's request for a $150 hourly fee for Mr. Qualls and found that $125 per hour was Mr. Qualls's "reasonable" rate. *See Clark v. Pollo, LLC*, No. 4:20-CV-01100-LPR, 2023 WL 26922425, at *2–3 (E.D. Ark. Mar. 29, 2023) (Slip Copy). Further, this Court has recently reduced Ms. Matlock's hourly fee from $250 to $150. *See id.*

In support of Mr. Qualls's rate of $150 per hour, SLF relies on *Intres v. Neumeier Enter., Inc.*, No. 2:22-cv-02067-PKH-MEF, 2023 WL 4571277 (W.D. Ark. June 29, 2023) (Slip Copy). *See* ECF No. 36, p. 13. In *Intres*, the Magistrate exercised its "independent obligation to ensure that [SLF's] rates [were] reasonable in the current market area," but the defendant "stated no objection to the hourly rates requested by [SLF]." *Intres,* 2023 WL 4571277, at *4. Moreover, while the Magistrate's Report and Recommendation was adopted by the Court, the defendant did not object to any part of the Magistrates findings or recommendations, including the

reasonableness of the rates. *See Id.,* 2023 WL 4566060 (Order adopting findings and recommendations). SLF also represents that, "[i]n *Rodriguez v. Superior Real Estate Sols.*, the plaintiff requested total fees of $14,833.81, which included requested hourly rates of $383.00 for attorney Josh Sanford and $300.00 for attorney Venessa Kinney. No. 4:19-cv-405-DPM, 2021 U.S. Dist. LEXIS 81981, at *1 (E.D. Ark. 29 Apr. 2021)." ECF No. 36, p. 13. "However, what SLF fails to mention is that the defendant did not object to the hourly rates. . . . Also noticeably absent from the motion is any reference to all the other cases where his $300+ hourly rate was rejected and reduced." *Skender v. Eden Isle Corp.*, 4:20-cv-00054-BRW, 2021 WL 2964991, at *3 (E.D. Ark. Jule 14, 2021) (collecting cases in which Mr. Sanford's fee was reduced).

The sole, passing acknowledgement that SLF's "rates requested [in Plaintiffs' Motion] are not as low as those awarded in some other cases," totals four lines and a single citation. *See* ECF No. 36, p. 15.[7] In its defense, SLF observes that "the rates requested by SLF reflect the *geographic area in which SLF practices*, the type of law practiced by SLF, the qualifications and experience of SLF's attorneys who worked on this case, and the resulting market value of those

---

[7] In a footnote, SLF asserts that its "continued requests for higher hourly rates than the rates previously awarded by courts in this district is not out of disrespect for judicial decisions but is an effort to maintain consistency while pursuing the Firm's interests." ECF No. 36, p. 15 n.13. It is axiomatic that higher fee rates result in higher total fees petitioned for (and ideally collected) by SLF and that collecting more money is a better business proposition than collecting less money. Thus, it is perfectly clear that high rates are in "the Firm's interest." However, this logic misses the point. SLF understands that it is entitled to only what is a reasonable fee in this local market. As set forth in this Response, the reasonableness of an attorney's fee, particularly the fees of SLF, have been thoroughly considered and adjudged by U.S. District Courts for the Eastern and Western Districts of Arkansas. Yet, SLF continues to assert entitlement to hourly rates that far exceed those that this Court has stated are reasonable and signals to this Court that it has no intention of ceasing this practice. As this Court has observed, "[w]hen a party submits a fee petition, it is not the opening bid in the quest for an award." *Vines*, 2021 WL 11583464, at *12 (cleaned up) (citations omitted); *see also id.* at *2 (stating that, "[o]nce again, Mr. Sanford seeks $325 an hour, as if it is an opening bid in a negotiation," and collecting cases). But, this is exactly the rationale exhibited in Plaintiffs' Motion.

factors." *Id.* (emphasis added). However, as SLF is acutely aware, "the geographic area" in which it practices extends outside of the "local bar," which is the geographic area relevant to determining what constitutes a reasonable rate. *Burton*, 20 F.4th at 432[8] ("The district court properly applied its familiarity with the local bar to calculate reasonable rates."); *see also Emery*, 272 F.3d at 1042 ("[a] reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.").

Lastly, SLF's rates of $100 for paralegals and $75 for law clerks have likewise been rejected by this Court. Indeed, in the same case SLF relies on to support an hourly rate of $150 for Mr. Qualls, the Court reduced paralegal rates to $75 per hour and law clerk rates to $25 per hour. *See Intres*, 2023 WL 4571277, at *4 (defendant did not object to rate, but the Magistrate recommended a fee reduction as part of its "independent obligation to ensure that the rate are reasonable in the current market area."); *Intres*, 2023 WL 4566060 (adopting and approving Magistrate's findings and recommendations without objection from the defendant). The U.S District Courts for the Eastern and Western Districts have routinely approved a $25 hourly rate for law clerks, *see Clark*, 2023 WL 26922425, at *3; *Mitchell v. Brown's Moving & Storage, Inc.*, No. 4:19-CV-783-LPR, 2023 WL 2715027, at *3 (E.D. Ark. Mar. 29, 2023) (Slip Copy); *Holcombe v. Midwest Outdoor Concepts, LLC*, No. 5:22-CV-51161, 2023 WL 3077856, at *2 (W.D. Ark. Apr. 23, 2023); *Carden v. Logan Centers, Inc.*, No. 3:19-cv-167-DPM, 2022 WL 4537871, at *1 (E.D. Ark. Sept. 28, 2022), and a $75 hourly rate for paralegals, *see Holcombe*, 2023 WL 3077856, at *2; *Carden*, 2022 WL 4537871, at *1; *but see Clark*, 2023 WL 26922425 (approving a $100 hourly rate for paralegals); *Brown's Moving & Storage*, 2023 WL 2715027, at *3 (same).

---

[8] SLF was plaintiffs' counsel in this case.

11

The hourly rates proposed by SLF exceed the *reasonable* rates approved by this Court on numerous occasions. Indeed, SLF acknowledges that its requested rates have been deemed "unreasonable," yet it, without convincing explanation, seeks such rates anyway. *See* ECF No. 36, p. 15. Accordingly, Defendants request that the Court reduce the hourly rates as follows:

- Rebecca Matlock: $150;
- Colby Qualls: $125;
- Paralegal: $75; and
- Law Clerk: $25.

As explained above, SLF's requested fee should be reduced to reflect the rate that are "reasonable" in the "local market."

**B.  PLAINTIFFS' UNSUCCESSFUL CLAIMS WARRANT A REDUCTION OF FEES UNDER *CHILDRESS*.**

After the Court arrives at the "lodestar," "[t]hen, it 'may reduce [the lodetar] if a plaintiff does not obtain all the relief . . . sought.'" *Vines v. Welspun Pipes, Inc.*, 4 F.4th 849, 855 (8th Cir. 2021) (quoting *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)) (alteration in *Vines*). Here, Plaintiffs initiated this lawsuit as a collective action. *See* ECF Nos. 1. At the commencement of trial, the collective included a total of **40 Plaintiffs**, including the Named Plaintiffs, the *Hames* Plaintiffs, and the opt-in Plaintiffs. Plaintiffs sought minimum wage and overtime damages, as well as liquidated damages, for *all* 40 Plaintiffs. Additionally, Plaintiffs Holmes, Alexander, Norris, and Garner sought damages for retaliation and liquidated damages. *See id.* Based on Plaintiffs' counsel's calculation of damages *after* trial, the pre-trial exposure to

Defendants was in excess of $1,250,000.[9] As the Court is aware, Plaintiffs recovered a mere $60,704.50[10]—less than **5%** of the estimated pre-trial exposure.[11]

Additionally, when considering the "relief . . . sought," it is useful to view the issue in terms of the claims of the individual Plaintiffs. That is, counsel began trial seeking recovery of unpaid minimum wage and overtime for **40 individuals**. At the conclusion of the trial, counsel for Plaintiff was seeking recovery of unpaid minimum and overtime for **6 individuals**—a mere 15% of the number of Plaintiffs when the trial began. **Thirty-four claims** were fully dismissed by the Court. *See Holmes* ECF No. 116.

Given the significant differential between the relief sought by Plaintiffs at the beginning of this litigation and the relief obtained for Plaintiffs by SLF, *see Vines*, 4 F.4th at 855 (quoting *Childress,* 932 F.3d at 1172), Defendants request that the Court exercise its discretion to make a significant reduction in the fees requested by Plaintiffs. Specifically, Defendants request that the Court impose a 50% reduction.[12]

---

[9] Plaintiffs claimed, in their Brief on Damages, that the retaliation damages for Plaintiffs Holmes, Alexander, Norris, and Garner, with liquidated, totaled $466,844.64. *Holmes*, ECF No. 132, p. 19–25. Plaintiffs also claimed that in their post-trial Brief in Damages that, *without liquidated* (which the Court ruled out at trial), that six Plaintiffs were entitled to a total of $68,195.98. This represents an average of $11,366 per Plaintiff. Extrapolating this figure across the class, an award for all 40 Plaintiffs would have resulted in approximately $454,640, without liquidated, and $909,280, with liquidated. Thus, *prior to trial*, a reasonable estimation of Plaintiffs' desired recovery would be approximately $1,362,920.

[10] This includes $59,313.08 for the *Holmes* Plaintiffs and $1,391.42 for the *Hames* Plaintiffs.

[11] *See* Footnote 26.

[12] Given that percentage of the relief obtain compared with the relief sought (5%), Defendants believe that a 50% reduction is generous.

### C. THE *JOHNSON* FACTORS WARRANT FURTHER REDUCTION OF SLF'S FEES.

"When reducing the lodestar, '[t]he district court also may consider" the *Johnson* factors. *See Vines*, 4 F.4th at 855 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)). Unsurprisingly, Plaintiffs conclude that the *Johnson* factors warrant an *upward* deviation in SLF's fees from the lodestar. First, citing an opinion from the Southern District of Ohio, *Autrey v. Food Concepts,* Plaintiffs state: "Specialization, such as in labor and employment law, can support a higher-then-average rate. Accordingly, this factor supports an upward deviation, if any." ECF No. 36, p. 16 (internal citation omitted). In *Autrey*, the Court (which is not within the "local bar" in *this* case, *see Burton v. Nilkanth Pizza, Inc.*, 20 F.4th 428, 432 (8th Cir. 2021) ("The district court properly applied its familiarity with the local bar to calculate reasonable rates."); *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("[a] reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.")), the Court averaged the rates for: (a) an attorney practicing in suburban Columbus, Ohio ($200); (b) an attorney with twenty-six to thirty-five years of practice ($225); (c) an attorney specializing in labor and employment law ($288); and (d) a partner in a small firm of two-to-seven attorneys ($225). *Autrey v. Food Concepts Int., LP*, No. 2:13-cv-00131, 2017 WL 1163845, at *5 (S.D. Ohio Mar. 29, 2017). Notably, in *Autrey*, the Court was asked and refused to award the attorney's requested fee of $325. *Id.* Rather, the Court assessed the local bar and awarded a "reasonable" fee based on its findings. *See id.* The takeaway from the *Autrey* opinion is not remotely related to the purpose for which Plaintiffs cite it. Indeed, the *Autrey* Court utilized the same approach as this Court—applying its familiarity with the local bar to calculate a reasonable fee. *See Burton*, 20 F.4th at 432. As Defendants have explained in detail, *see* Section III(A)(2), *supra*, $338 per hour is *not a reasonable fee* and *Autrey* only supports that conclusion.

Second, Plaintiffs argue that the "contingency nature of the fee" demands an upward deviation from the lodestar, which is "captured" in its SLF's higher hourly rate. *See* ECF No. 142, p. 16–17. While Defendants have not been provided with a copy of any agreement between SLF and Plaintiffs regarding any fee arrangement, Plaintiffs assert that SLF "relies on the fee-shifting provisions of the FLSA to recover fees in this case." *Id*. However, it is and has been the practice of SLF to rely on the FLSA's fee-shifting provision to recover fees. U.S. District Courts for the Eastern and Western Districts of Arkansas have taken this factor into consideration and *still* awarded hourly rates more consistent with the rates proposed by Defendants in Section III(A)(2), *supra*.

Notably absent from Plaintiffs' Motion is any reference to a *Johnson* factor that would warrant reduction of the lodestar. For example, cases of first impression generally require more time and effort on the attorneys' part. *See Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). As the Court is aware, an FSLA case seeking unpaid wages due to employee misclassification is hardly a novel issue, particularly for SLF. Similarly, *Johnson* endorses consideration of the amount of damages and backpay awarded. *See id.* As explained in Section III(B), *supra*, the award in this case was a small fraction of the estimated pre-trial recovery expectations of Plaintiffs (and SLF).

To the extent any further deviation from the lodestar is warranted, that deviation should be downward. Plaintiffs' arguments for an *upward* deviation are inapposite, from court outside of the local bar (and outside of the Eighth Circuit), and misinterpretation of the opinions cited. Accordingly, Defendants contend that, after consideration of the *Johnson* factors, another 15% reduction in SLF's fee request is appropriate.

**D.     Costs**

Defendants do not object to paying the costs sought in Plaintiffs' Motion.

## V.     CONCLUSION

Given the facts of this case, the requested attorneys' fees sought by Plaintiffs must be reduced. This Court has discretion in determining a reasonable attorney fee that will attract competent legal counsel but not result in a windfall to attorneys for work beyond that which was reasonably expended or necessary to achieve an appropriate result for Plaintiff. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983)). Therefore, Defendants respectfully request that the Court grant in part and deny in part Plaintiff's Motion for Costs and Attorneys' Fees pursuant to the foregoing arguments and relevant authorities, and for all other relief to which they are entitled.

Respectfully submitted,

Alexander D. Clark, Ark. Bar No. 2017112
Rose Law Firm, P.A.
120 East Fourth Street
Little Rock, AR 72201
Phone: (501) 375-9131
Fax: (501) 375-1309
Email: aclark@roselawfirm.com

**ATTORNEY FOR DEFENDANTS**